UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHAD RUDOLPHO ANGLE, | No. C 07-250 SI |
| Plaintiff, | **ORDER GRANTING JUDGMENT ON THE PLEADINGS TO MENTAL HEALTH DEFENDANTS** |
| v. | |
| ALAMEDA COUNTY MEDICAL CENTER; et al., | |
| Defendants. | |

## INTRODUCTION

This action began in state court and was later removed to federal court because claims under 42 U.S.C. § 1983 raised federal questions. Plaintiff, Chad Angle, initially was represented by counsel but counsel later withdrew from representing him and Angle's efforts to find replacement counsel were unfruitful. Angle now represents himself from the confines of Atascadero State Hospital, where he is incarcerated as a mentally disordered offender.

This matter is now before the court for consideration of a motion for judgment on the pleadings filed by Alameda County Medical Center and Mohammed A. Hyderi, M.D. (the "mental health defendants"). After numerous extensions of the deadline, Angle finally filed an opposition to the motion. For the reasons discussed herein, the motion will be granted.

## BACKGROUND

There are two groups of defendants in this action: the mental health defendants and the law enforcement defendants. Angle's complaint alleges claims based on two basic events. First, he claims he did not receive adequate psychiatric care from the mental health defendants when

he was taken to the John George Psychiatric Pavilion ("JGPP") following his arrest for assaulting two women in Oakland on October 17, 2005. He asserts that the mental health defendants failed to keep him at the facility and failed to treat him – both decisions being motivated by improper financial incentives. Second, plaintiff claims that he was subjected to excessive force by the law enforcement defendants who beat him up on October 21, 2005, when he became agitated after not receiving medication and spit on one of them at the county jail.

The mental health defendants' motion to dismiss focuses largely on a causation issue, with the gist of their argument being that Angle's injuries suffered during the beating by deputies was unconnected to their alleged acts. The court therefore describes the allegations of the complaint relevant to that issue in more detail. The complaint alleges the following:

Angle has bipolar disorder with frequent psychotic episodes. Complaint, ¶ 11. Angle requires medication to control his symptoms, including violent psychotic episodes. Id.

On October 17, 2005, Angle was taken by the Oakland police to the JGPP for psychiatric evaluation after an altercation with two strangers at a bus stop. Id. at ¶ 10. He was held at JGPP for three days. Id. Angle had been to the JGPP on involuntary commitments 28 times before this occasion. Angle received inadequate care at the JGPP on this occasion and, when released from the JGPP, he was still a danger to himself and others. Complaint, ¶ 14. The mental health defendants did not believe that Angle was no longer a danger to himself an others, and they based their decision to release him on improper reasons, including financial incentives. Id.

On October 19, 2005, Angle was discharged from JGPP into the care of the Alameda County Sheriff's office and taken to the Santa Rita jail. While at the jail as a pre-trial detainee, Angle was involved in an altercation with another inmate and was placed in isolation. He did not receive any of his medication while in isolation. Id. at ¶ 15.[1]

On October 21, 2005, Angel became agitated and spit on deputy Van Dicken. Several deputies "staged a retaliatory attack on Plaintiff, beating him severely, which resulted in

---

[1]Although the mental health defendants' brief suggests otherwise, the complaint does not allege that Angle received medication at JGPP and then it was stopped when he was put in isolation. His complaint makes the simpler assertion that he did not receive medication when in isolation at the jail.

2

numerous injuries to Plaintiff, including a broken jaw, broken nose, fractured orbital lobe, dislocated finger, and contusions and abrasions all over his body." Id. at ¶ 16.

As a result of the foregoing, "Angle suffered pain and physical injuries including, but not limited to, a broken jaw, broken nose, fractured orbital lobe, dislocated finger, and contusions and abrasions all over his body, . . . severe emotional and mental distress, fear, terror, anxiety, humiliation, embarrassment, and loss of security and dignity." id. at 18-19.

As to the mental health defendants, Angle alleges six causes of action: (1) a claim against Dr. Hyderi under 42 U.S.C. § 1983 for a violation of his right to due process, (2) a Monell claim against the Alameda County Medical Center under 42 U.S.C. § 1983, (3) a claim under California Civil Code § 52.1, (4) a claim for medical negligence, (5) a claim for failure to discharge statutory duties under California Welfare and Institutions Code § 5150.3, 5150.4 and 5152, and (6) a claim for intentional infliction of emotional distress. The mental health defendants move for judgment on the pleadings on all six causes of action.

## DISCUSSION

A motion for judgment on the pleadings under Federal Rule of Civil Procedure 12(c) filed by a defendant is basically the same as the more well-known Rule 12(b)(6) motion, except that a Rule 12(c) motion is filed after the pleadings are closed rather than before an answer is filed. For purposes of such a motion, the allegations of the complaint are accepted as true. See Hal Roach Studios, Inc. v. Richard Feiner and Co., Inc., 896 F.2d 1542, 1550 (9th Cir. 1990). "Judgment on the pleadings is proper when the moving party clearly establishes on the face of the pleadings that no material issue of fact remains to be resolved and that it is entitled to judgment as a matter of law." Id. No outside materials (such as declarations and documents) are considered, or the motion must be converted to a summary judgment motion. See id.

A pro se complaint must be liberally construed and "'may be dismissed for failure to state a claim only where "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief."'" Weilburg v. Shapiro, 488 F.3d 1202, 1205 (9th Cir. 2007) (citations omitted). The complaint here was drafted by counsel; therefore, the usual

3

rationale for the liberal construction rule – to avoid penalizing unskilled litigants for failure to comply with technical requirements – is absent. Nonetheless, the court will construe the complaint liberally because to do otherwise might result in the inefficiency of dismissing a lawyer-drafted complaint only to have the exact same document resubmitted by a now-unrepresented plaintiff, and then have it be sufficient or at least in need of a second examination under the liberal construction rule. Whether the complaint is liberally construed or not does not really matter here because of the nature of defendants' motion which focuses on the causation problem rather than any pleading defect.

A.   Claims With Causation Problems

    1.   Section 1983 Claims

Defendants argue that the first two causes of action fail to state a claim because Angle's allegations fail to show that the mental health defendants' alleged actions were the legal cause of Angle's injury. They assert that the alleged mistreatment and early discharge cannot be said to have legally caused Angle to suffer the beating he did at the hands of the deputies.

Angle's opposition asserts there was a causal connection. Importantly, however, he does not dispute that the injuries he complains of are those suffered in the alleged beating by the deputies. See Opposition, pp. 2-3. Angle argues that (1) had he received proper care, he would not have been a danger to himself or others "which is what lies at the heart of the point of the argument," (2) had he remained at JGPP, "events would have turned out much differently and less to my detriment likely avoiding the injury that has left part of my face permanently numb," (3) had he received proper care he could have used the time to mentally prepare for jail and be stabilized on medication which takes longer than 36 hours to achieve, and (4) had he received proper treatment, he would not have spit on the deputy or attacked the inmate at the jail. Angle also argues that the "danger to self" may be "from an outside source, i.e., A cliff, a fire, a group of rogue deputies." Id. p. 3.

In order to be liable under § 1983, a defendant must cause the deprivation of one or more of the plaintiff's constitutional rights. See Van Ort v. Estate of Stanewich, 92 F.3d 831, 836-37

(9th Cir. 1996), cert. denied, 519 U.S. 1111 (1997). "Traditional tort law defines intervening causes that break the chain of proximate causation." Id. "The causation requirement of sections 1983 and 1985 is not satisfied by a showing of mere causation in fact. See W. Prosser, Law of Torts § 41 at 238-39 (4th ed. 1971). Rather, the plaintiff must establish proximate or legal causation." Arnold v. International Business Machines Corp., 637 F.2d 1350, 1355 (9th Cir. 1981). Liability can attach whether the defendant directly or indirectly causes the deprivation, but the defendant's acts must be the proximate cause of the injury. See id.

An unforeseen and abnormal intervention can break the chain of causation, such that the defendant's conduct is not considered the proximate cause of the plaintiff's injury and the defendant does not have § 1983 liability. See Van Ort, 92 F.3d at 837. In Van Ort, the court ruled as a matter of law that there was no Monell liability[2] for hiring a deputy who assaulted and robbed homeowners in his off-duty time after seeing their valuables during a search of their home he conducted as a sheriff's deputy. Although the deputy had a considerable disciplinary record and bad work evaluations in the sheriff's department, those facts did not show that the county could have foreseen the deputy's actions, which would have established the necessary causal link between the county's hiring and supervision policy and the homeowners' injuries. The county may have been alerted to the fact that the deputy would be a bad deputy, but "the County could not reasonably have foreseen that [the deputy] would become a free-lance criminal and attack the [homeowners] as he did. . . . His unforeseeable private acts broke the chain of proximate cause connecting the County's alleged negligence to the [homeowners'] injuries. [Citation] Without proximate cause, there is no section 1983 liability." Van Ort, 92 F.3d at 837.

Another case supporting the mental health defendants' contention is Martinez v. California, 444 U.S. 277, 285 (1980). In Martinez, the survivors of a girl who was murdered by a parolee five months after he was granted parole sued the parole board under § 1983 for

---

[2] Monell liability refers to the liability of municipalities, who are "persons" subject to liability under 42 U.S.C. § 1983 where official policy or custom causes a constitutional tort, see Monell v. Dep't of Social Servs., 436 U.S. 658, 690 (1978).

5

negligently paroling the murderer. The Court held that the parole board could not be said to have deprived the decedent of her life. The "decedent's death is too remote a consequence of the parole officers' action to hold them responsible under the civil rights law." Id. at 285. Although Martinez was determining whether there was state action, its reasoning has been relied upon by courts deciding causation questions. See Arnold, 637 F.2d 1356; Van Ort, 92 F.3d at 837. Here, the causal connection was even more remote than that in Martinez, and would be like the murderer suing the parole board for injuries he sustained at the hands of the decedent.

The mental health defendants' alleged misconduct was not the proximate cause of Angle's injuries. The deputies' intervening alleged criminal conduct or at least intentional tortious conduct severed any causal chain between the mental health defendants' alleged misconduct and Angle's injuries. Spitting on a guard is a not uncommon vulgarity in jails and prisons, and by no means is it something that is unique to mentally ill inmates. That a former patient later will be intentionally beaten by his jailers is simply not a foreseeable consequence of failing to provide adequate mental health care to that person when he is a patient. Angle's allegations show a beating completely out of line with the alleged provocative act of spitting: broken bones, a dislocated finger, contusions and abrasions all over the body, and mental injuries such as fear and terror. Complaint ¶¶ 18-19. Regardless of the care or length of his stay at JGPP, the parties agree that Angle's proper destination thereafter was the county jail due to his altercation at the bus stop. It is not reasonably foreseeable that a patient being discharged from a psychiatric facility will be subject to excessive force. Angle's claim is not that he spit and received a rational punishment, but rather is that he spit and was severely beaten by numerous law enforcement officers.

The parties are in agreement that the injuries Angle suffered and complains of are those he received when the deputies allegedly beat him. Angle does not request leave to amend, nor does he argue that he claims that he suffered any other injuries beyond those received at the hands of the deputies.

Even viewing the facts in a light most favorable to Angle, there is no causal connection between the alleged premature/wrongful discharge of Angle from the JGPP and the injuries of

which he complains. The mental health defendants' alleged acts of releasing Angle too soon and without proper treatment simply were not a cause in fact of the beating he received. The intentional tortious or criminal beating was an unforeseeable intervening event that broke any causal chain. The mental health defendants are entitled to judgment in their favor on the first and second causes of action in the complaint.

2. Medical Negligence

As with the § 1983 claims, the mental health defendants argue that the medical negligence claim falters on the causation element. The court agrees.

Under state law, a defendant's negligent conduct is a legal cause of harm if the conduct is a substantial factor in bringing about the harm and there is no rule of law relieving the defendant from liability. See Anaya v. Superior Court, 78 Cal. App. 4th 971, 973-74 (Cal. Ct. App. 2000). If an intervening act occurs that is highly unusual or extraordinary and therefore not foreseeable, it is a superseding cause, and the defendant is not liable. Vasquez v. Residential Investments, Inc., 118 Cal. App. 4th 269, 289 (Cal. Ct. App. 2004). "To show [an] act was a superseding cause, [the defendant] must establish as a matter of law that the intervening act was so highly unusual or extraordinary that the occurrence was not likely to happen and therefore was not foreseeable." Id.

The mental health defendants' alleged inadequate treatment and release was not the legal cause of the injuries Angle alleges. Angle does not dispute defendants' assertion that he did not suffer initial injuries as a result of his allegedly premature release from JGPP and that his injuries were those suffered when he allegedly was beaten by deputies. That beating was completely outside the reasonable chain of causation. Moreover, between Angle's release from the JGPP and the beating, several other events outside the mental health defendants' control further disrupted any causal chain: Angle attacked another inmate, Angle was put in isolation, and Angle was deprived of his medication in jail. Only after these events did Angle spit on a deputy. And only then the deputies inflicted the beating. That deputies would severely beat an inmate who had been released from mental health care was so extraordinary that it was not a foreseeable

7

consequence of the decision to release the inmate from mental health care – whether it was done prematurely or without adequate care having been given. The intentional tortious or criminal beating was an unforeseeable intervening event that broke any causal chain. The mental health defendants are entitled to judgment in their favor on the fourth cause of action in the complaint.

### 3. Intentional Infliction Of Mental Distress

The elements of California's tort of intentional infliction of emotional distress are (1) extreme or outrageous conduct; (2) with the intention to cause or in reckless disregard of the probability of causing; (3) and proximately causing; (4) severe emotional distress. See Cervantez v. J.C. Penney Co., Inc., 24 Cal. 3d 579, 593 (1979).

Defendants are entitled to judgment on the pleadings on this claim because of the same proximate cause problem discussed above. That is, the release of Angle from the JGPP was not the proximate cause of the later beating by deputies at the county jail. The mental health defendants are entitled to judgment on the pleadings in their favor on the sixth cause of action.[3]

### B. Claim Under Civil Code § 52.1

California Civil Code § 52.1(b) provides for a private cause of action against a person who, "whether or not acting under color of law, interferes by threats, intimidation, or coercion, or attempts to interfere by threats, intimidation, or coercion, with the exercise or enjoyment by any individual or individuals of rights secured by the Constitution or laws of the United States, or of the rights secured by the Constitution or laws of this state." Cal. Civ. Code § 52.1(a).

The mental health defendants argue that the complaint fails to state a claim for a violation of California Civil Code § 52.1. The court agrees. The complaint alleges that the mental health defendants "as described herein interfered with Plaintiff's exercise and enjoyment of his civil

---

[3] Even if this claim was liberally construed to be one for negligent infliction of emotional distress, the causation problem would be fatal to that claim also. See Ess v. Eskaton Properties, Inc., 97 Cal. App. 4th 120, 126 (2002) ("Negligent infliction of emotional distress is not an independent tort; it is the tort of negligence to which the traditional elements of duty, breach of duty, causation, and damages apply.")

8

rights, as enumerated above, including deprivation of substantive due process rights to physical security." Complaint, ¶ 31. For recovery under § 52.1, there must be an attempted or completed act of interference with a legal right plus coercion, intimidation or threat. See City and County of San Francisco v. Ballard, 136 Cal. App. 4th 381, 408 (Cal. Ct. App. 2006); Venegas v. County of Los Angeles, 32 Cal. 4th 820, 843 (Cal. 2004). Even construed liberally, the complaint simply is not susceptible to an interpretation that there was conduct by the mental health defendants that interfered with Angle's civil rights by coercion, intimidation or threat. Defendants are entitled to judgment in their favor on the second cause of action in the complaint.

C.   Claim Under Government Code § 815.6

The mental health defendants contend that Angle's cause of action under California Government Code § 815.6 must be dismissed because the statutes allegedly violated were not intended to protect from the risk of injury Angle sustained and/or the violations were not the proximate cause of his injury.

"Where a public entity is under a mandatory duty imposed by an enactment that is designed to protect against the risk of a particular kind of injury, the public entity is liable for an injury of that kind proximately caused by its failure to discharge the duty unless the public entity establishes that it exercised reasonable diligence to discharge the duty." Cal. Gov't Code § 815.6. To state a claim under § 815.6, the plaintiff must establish that: (1) the statute violated imposed a mandatory, not discretionary, duty, (2) the statute was intended to protect against the kind of risk of injury suffered by the plaintiff, and (3) the breach of the mandatory duty was the proximate cause of the plaintiff's injury. See State of California v. Superior Court, 150 Cal. App. 3d 848, 854 (Cal. Ct. App. 1984).

The statutes allegedly violated pertained to involuntary 72-hour detentions. The mental health defendants allegedly breached their statutory duties under California "Welfare and Institutions Code sections 5150.3, 5150.4, and 5152 to provide appropriate evaluation, treatment, and care to those detained and/or admitted to a facility under Welfare and Institutions Code §

9

5150." Complaint, ¶ 38.

Three of the four statutes cited clearly have no applicability. Section 5150.3 has no applicability because Angle alleges he was admitted to the facility and that section only applies to patients who are not admitted to a mental health facility. Section 5150.4 imposes no duties but merely defines the term "assessment." Section 5150 cannot support the claim because it permits, but does not require, certain persons to place in a mental health facility for 72-hour treatment and evaluation a person who, as a result of a mental disorder, is a danger to others or to himself or is gravely disabled. Angle's claim hinges on the applicability of the fourth cited section, § 5152.

California Welfare and Institutions Code § 5152 requires the evaluation and admission of persons admitted for 72-hour holds, provides procedures for regular release and early release, and provides procedures regarding information regarding medications. As relevant here, the section provides:

> Each person admitted to a facility for 72-hour treatment and evaluation under the provisions of this article shall receive an evaluation as soon as possible after he or she is admitted and shall receive whatever treatment and care his or her condition requires for the full period that he or she is held. The person shall be released before 72 hours have elapsed only if the psychiatrist directly responsible for the person's treatment believes, as a result of the psychiatrist's personal observations, that the person no longer requires evaluation or treatment.

Cal. Welf. & Inst. Code § 5152(a). Section 5152 was designed to protect against injury to the committed individual and the public as a result of the individual's mental condition and also to protect against indefinite confinements to mental hospitals. See Bragg v. Valdez, 111 Cal. App. 4th 421, 430 (Cal. Ct. App. 2003).

Although the duty to hold mental patients for 72 hours is for the protection of them and others, that duty is in relation to their mental illness, i.e., to prevent them from harming themselves or other people because of their mental illness. It is not enough to show only that the injury occurred after an alleged early release. As with the negligence claims, the unforeseeable event of deputies allegedly beating Angle after he was released to jail and after he spit on one of them is not the kind of injury against which the statute is designed to protect. Furthermore, the alleged improper early release was not the proximate cause of Angle's injuries

as explained in the preceding sections. In sum, even if Angle could show that the mental health defendants violated a mandatory duty under § 5152, the problems remain that (1) § 5152 was not intended to protect a former patient against the risk of being subjected to an extreme beating by deputies in the county jail and (2) the failure to provide the treatment and full 72-hour detention was not the proximate cause of the injuries he suffered when beaten by the deputies. The defendants are entitled to judgment on the pleadings on the fifth cause of action.

## CONCLUSION

The mental health defendants (i.e., the Alameda County Medical Center and Mohammed A. Hyderi, M.D.) have demonstrated their entitlement to judgment on the pleadings in their favor on all six claims alleged against them. The mental health defendants' motion to dismiss is GRANTED. (Docket # 49.) The court will wait until the conclusion of this case to enter a judgment so that a single judgment may be entered resolving all claims against all defendants together. The court does, however, contemplate that this order ends the involvement of the mental health defendants in this action

IT IS SO ORDERED.

Dated: February 13, 2008

_____
SUSAN ILLSTON
United States District Judge